UNITED STATES of America

v.

Kenneth McMILLAN.

Criminal A. No. CR 95–090.

United States District Court,
E.D. Louisiana.

Feb. 15, 1996.

Birch Pedigo McDonough, Ronald Tanet, Esq., New Orleans, LA, for Kenneth J. McMillan.

Bernard E. Burk, Bernard E. Burk, New Orleans, LA, for John B. McMillan, IV.

John T. Mulvehill, Federal Public Defender, New Orleans, LA, George O'Dowd, O'Dowd & O'Dowd, New Orleans, LA, for Toby Dial.

G. Patrick Hand, Jr., Gretna, LA, for Norbert A. Griffith, Timothy Gamble.

Martin E. Regan, Jr., Thomas More Calogero, Oscar Augusto Araujo, Regan, Manasseh & Boshea, New Orleans, LA, for Arthur L. Fish.

John T. Mulvehill, Federal Public Defender, New Orleans, LA, Thomas More Calogero, Regan, Manasseh & Boshea, New Orleans, LA, for Dawn Fish.

Milton Paul Masinter, Metairie, LA, for Danny C. Woods and April Woods.

John Patrick Connick, Connick, Lentini, Mouledoux, Wimberly & Delaup, Metairie, LA, John T. Mulvehill, Federal Public Defender, New Orleans, LA, for Theresa A. Whillock.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is a motion by Kenneth McMillan to withdraw his guilty plea to Count II of his indictment. For the reasons that follow, the motion is GRANTED.

### Background

On March 1, 1995, at the close of a drug conspiracy investigation, federal agents seized four nine-millimeter handguns and a .22 caliber pistol equipped with a silencer from a shed on property owned by April and Danny Woods. The grand jury returned an indictment against Kenneth McMillan and others nine days after the raid. Count I charged all defendants with conspiring to possess marijuana with intent to distribute; Count II charged Mr. McMillan alone with "using and carrying" the five seized firearms in relation to the drug-trafficking offense. Count III charged Mr. McMillan with being a felon in possession of firearms. The indictment did not charge Mr. McMillan with aiding and abetting under 18 U.S.C. § 2.

On December 6, 1995 Kenneth McMillan pled guilty to all three counts. At issue now is his guilty plea to Count II, "using and carrying" five firearms in relation to the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1), a crime that requires the imposition of five years in prison per firearm, consecutive to other counts of conviction. (Because the .22 was equipped with a silencer, Mr. McMillan would get still another five years.) In support of Mr. McMillan's plea to Count II, the government put into the record a factual basis for guilt that recited:

> On February 16 ... in the course of intercepted conversations, KENNETH McMILLAN instructed his half-brother, TOBY DIAL, to go to DANNY and "STORMY"'s, and they would have something for him.... KENNETH McMILLAN then called and told DANNY and "STORMY" WOODS that TOBY DIAL was on his way over, and instructed them to gather several of his weapons (a black .9mm, two nickel-plated .9mms, a .22 caliber with a silencer) and corresponding ammunition from the shed located behind their residence.... In a separate conversation on February 16, KENNETH McMILLAN told his sister, Sharon, that he would be traveling on that day with his two half-brothers, TOBY DIAL and JOHN BLAIR McMILLAN, "to do his last job" (pick up a load of marijuana). On February 16 ... KENNETH McMILLAN left his residence, returning on February 20.

According to the government, the February 16th conversations establish that Kenneth McMillan and his two brothers actually carried the guns with them while "doing their last job." At the very least, the government contends, the conversations show that Kenneth McMillan had control over the firearms and caused others to carry them; that viewpoint is probably more tenable.

The very day of Mr. McMillan's rearraignment, the United States Supreme Court announced its opinion in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133

L.Ed.2d 472 (1995). *Bailey* narrowed the reach of the "use" prong of Section 924(c)(1) by holding that use "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in the predicate offense." *Id.* at ——, 116 S.Ct. at 505 (emphasis in original). Before *Bailey*, the Fifth Circuit had interpreted "use" to encompass situations in which a firearm was proximate to drugs or accessible to one involved in a drug offense. *See United States v. Pace*, 10 F.3d 1106, 1117 (5 Cir.1993) (holding that government may show use "by simply showing that the weapons facilitated, or could have facilitated, the drug trafficking offense."). During the rearraignment proceeding, the Court advised McMillan of his rights under *Pace*, not *Bailey*, which was not then a matter of public knowledge.

Mr. McMillan, now awaiting sentencing, moves to withdraw his guilty plea as to Count II. The government, in turn, urges that the factual basis should sustain a plea to aiding and abetting others to carry firearms, a lesser-included offense. For purposes of a conviction after trial, the government is correct. For purposes of a conviction upon a plea of guilty, the government is in error.

## Law And Application

### I.

 If a defendant moves to withdraw his guilty plea before sentencing under Federal Rule of Criminal Procedure 32(e), the Court may permit him to do so "for any fair and just reason." The Rule does not confer on a defendant an unfettered right to change his mind; but the Court may exercise broad discretion in assessing whether the reasons advanced are fair and just. *See United States v. Thomas*, 13 F.3d 151 (5 Cir.1994). Several factors animate this assessment: a defendant's assertion of innocence; the period of delay between the plea and the withdrawal motion; prejudice to the government or to the court; whether the original plea was knowing and voluntary, *see Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); and whether the defendant received effective assistance of counsel. *Thomas*, 13 F.3d at 153 n. 4. The new rule

announced in *Bailey*, on the day of Mr. McMillan's rearraignment, would justify the withdrawal of his plea to Count II under the Rule 32(e) standard. Thus, the only unsettled question is whether Mr. McMillan may nonetheless be said to have pleaded guilty to an aiding and abetting charge, because he could in theory have been convicted of such a lesser-included charge at trial.

### II.

The factual basis for Kenneth McMillan's guilty plea to Count II cannot, after *Bailey*, support his conviction for "use" of a firearm in relation to his drug crime. The factual basis establishes only that he instructed others to carry firearms in connection with a drug purchase. The government urges that the factual basis would support a conviction for aiding and abetting under 18 U.S.C. § 2. The lack of such a charge in the indictment is not fatal, the prosecutors claim; they stress that the Court could sustain a conviction for a lesser-included offense. *United States v. Gordon*, 812 F.2d 965, 969 (5 Cir.1987). To that limited extent, the government is correct. But only to that extent.

In *Gordon*, the defendant, David Woodcock, was charged with murder and conspiracy to commit murder. The indictment, as here, failed to specify an aiding and abetting count. Woodcock was convicted of a lesser-included offense at trial. On appeal, he protested that the government did not prove that he actually killed the victim, and objected to the trial court's instruction to the jury on the lesser-included offense of aiding and abetting. The Fifth Circuit sustained his conviction, holding that "the rule is well established ... that one who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted." *Id.* Although *Gordon* is certainly good law in the trial setting, it is inapplicable in the context of a guilty plea. A guilty plea is different; it implicates a state of mind that is in sharper focus, one that is not at issue in the trial setting.

 To accept a guilty plea, a Court must find that the defendant pleaded "knowingly and voluntarily." *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1711–12. That is fundamental to due

process. Thus, the Court must explain the elements of the charge, interrogate the defendant to ensure that he acts on his own volition, and inform him of the penalties attached to a conviction. As the United States Supreme Court has stated when commenting on the defendant's state of mind in a guilty plea:

> A plea [cannot] be voluntary in the sense that it constitute[s] an intelligent admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him.

*Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976). It is that sentiment that drives the result here. In *Henderson,* the Court overturned the conviction of a defendant who had been indicted for first-degree murder, and pled guilty to a charge of second-degree murder. He had not been informed that an intent to kill formed an element of second-degree murder. Although the Court found that, had the petitioner gone to trial, the jury would have been entitled, on the facts, to find the requisite intent, the Court also found that "a jury would not have been required to draw that inference." *Id.* at 645–46, 96 S.Ct. at 2258. Although second-degree murder was certainly a lesser-included offense, nothing in the record of the plea proceedings, stated the Court, "can serve as a substitute for either a finding after trial, or a voluntary admission." *Id.* at 646, 96 S.Ct. at 2258; *see also McCarthy v. United States,* 394 U.S. 459, 466–67, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (vacating guilty plea to willful tax evasion where defendant admitted only negligence, holding that "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.").

No element of a lesser-included crime was explained to Mr. McMillan at the rearraignment. Mr. McMillan knowingly and voluntarily pled guilty only as a principal, as one who "used and carried" a firearm himself and as defined pre-*Bailey;* not as one who aided others to do so. That was not the charge, and the government was not seeking a guilty plea to anything but the explicit charges in the indictment. *Bailey* was not in the picture at the time. As *Henderson* and *McCarthy* illustrate, one who pleads guilty to a crime does not also plead guilty to all lesser-included offenses. The government's position undercuts the careful state-of-mind assurances for plea acceptance required by *Boykin* and related decisions.

Accordingly, the defendant's motion to withdraw his plea to Count II of the indictment is GRANTED. *Gordon* might well be at work at McMillan's trial on Count II, but it is not at work just now.