USCA1 Opinion

 

 United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 96-1588 UNITED STATES OF AMERICA, Appellee, v. PEDRO MURIEL A/K/A PEDRO JUAN REYES-MURIEL, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Scott A. Lutes for appellant. ______________ Margaret E. Curran, Assistant United States Attorney, with whom ___________________ Sheldon Whitehouse, United States Attorney, and Zechariah Chafee, ___________________ ________________ Assistant United States Attorney, were on brief for appellee. ____________________ May 5, 1997 ____________________ BOWNES, Senior Circuit Judge. Defendant-appellant BOWNES, Senior Circuit Judge. ____________________ Pedro Muriel appeals the district court's denial of his motion to withdraw his plea of guilty. We affirm.  BACKGROUND BACKGROUND Muriel was arrested during the execution of a warrant to search his girlfriend's apartment. When police entered the apartment on September 14, 1995, they found Muriel standing in a bedroom in his underwear and reaching toward the bed, upon which police found a loaded Smith and Wesson 10-millimeter handgun under a pillow. Muriel claims that he was not reaching for the gun but for his pants.  Police had obtained the warrant to search the two- bedroom apartment rented by Muriel's girlfriend, Ingrid Ostos, on the basis of information provided by a reliable informant previously used by the police. In the bedroom in which they found Muriel and the gun, police also found $1,065 in cash in a nightstand, an ammunition box containing sixteen live .45 caliber rounds, and some personal papers belonging to Muriel and Ostos. In the other bedroom they found a plastic bag holding twenty-three glassine packets containing traces of heroin and a small electronic scale.  Muriel had previously been convicted for other offenses. At the time he was arrested, he was facing a pending violation of a probationary term and a suspended sentence in Rhode Island Providence County Superior Court. -2- 2 In the case at bar, Muriel was indicted on three counts: Count I, violation of 21 U.S.C. 841(a) (possession of heroin with intent to distribute), Count II, violation of 18 U.S.C. 924(c)(1) (using or carrying a firearm during and in relation to a drug-trafficking crime), and Count III, violation of 18 U.S.C. 922(g) by being a "felon-in- possession" (i.e., possession of a firearm after having been convicted of a felony). Muriel entered a plea of not guilty to the charges at his arraignment, and the case was placed on the trial calendar for December 1995. On November 30, 1995, the parties signed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(e)(1)(B), in which Muriel agreed to plead guilty to Count III (the felon-in-possession charge) and the government agreed to drop the other two charges and recommend to the court that Muriel be sentenced at the low end of the applicable guideline range. The government also orally agreed not to oppose a three-level reduction for acceptance of responsibility. Between the time the plea agreement was accepted and Muriel's sentencing, the Supreme Court decided Bailey v. _________ United States, 116 S. Ct. 501 (1995), which altered the ______________ prevailing interpretation of the term "use" in 18 U.S.C.  924(c)(1), one of the offenses with which Muriel had originally been charged, but which was dropped by the government pursuant to the plea agreement. 18 U.S.C.  -3- 3 924(c)(1) provides, in relevant part, that any person who, "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall . . . be sentenced to imprisonment for five years . . . ." In Bailey, the Supreme Court held that, in order to constitute ______ an offense under the "use" prong of 924(c)(1), there must be evidence of "active employment" of a firearm in the commission of the predicate offense; mere possession of a firearm by a person committing an offense is not sufficient. Id. at 505. At the sentencing hearing on February 23, ___ 1996, Muriel moved to vacate his plea of guilty so that he could move to suppress evidence seized during the search of September 14, 1995. The district court denied the motion, and Muriel was subsequently sentenced to thirty-three months in prison, a three-year period of supervised release, and a fine of $7,130.80. He then timely filed this appeal.  Muriel wants to withdraw his plea of guilty to the felon-in-possession charge. He argues that he did not receive the benefit of his bargain in pleading guilty to this charge because the Supreme Court's decision in Bailey, handed ______ down after Muriel had pled guilty pursuant to the agreement, would nullify the 18 U.S.C. 924(c)(1) charge, Count II of the indictment, which was dropped by the government pursuant to the plea agreement. Muriel argues further that since the sentencing court was not convinced by a fair preponderance of -4- 4 the evidence on Count I, Count III is the only viable charge left against him. Appellant's Br. at 8.  Muriel does not request a trial; indeed, he does not profess his innocence, but wishes to file a motion to suppress evidence in order to challenge the affidavit upon which the search warrant which led to the discovery of the gun was based. Muriel thus contends that he should be permitted to withdraw his guilty plea in order to avail himself of another strategy in his defense.  ANALYSIS ANALYSIS Muriel makes two arguments on appeal. First, he contends that the district court abused its discretion in denying his motion to withdraw his plea because he has asserted a fair and just reason for doing so. Second, Muriel contends that the district court committed clear error in sentencing him by denying him a downward adjustment for acceptance of responsibility. I. I. Muriel moved to vacate his guilty plea before he was sentenced. Federal Rule of Criminal Procedure 32(e), which governs plea withdrawals, states, in pertinent part: "If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." A defendant has no absolute right to withdraw a -5- 5 guilty plea. See United States v. Isom, 85 F.3d 831, 834 ___ ______________________ (1st Cir. 1996); United States v. Ribas-Dominicci, 50 F.3d _________________________________ 76, 78 (1st Cir. 1995). Moreover, a district court's decision granting or denying a motion to withdraw a guilty plea may be reversed only upon a demonstrable abuse of discretion. See United States v. Sanchez-Barreto, 93 F.3d ___ _________________________________ 17, 23 (1st Cir. 1996), cert. denied sub nom. Arroyo-Reyes v. _____ ______ ___ ____ _______________ United States, 117 S. Ct. 711 (1997); United States v. ______________ _________________ Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994).  _______________ We have employed four criteria in determining whether a defendant has asserted a "fair and just" reason for withdrawing a guilty plea:  (1) the plausibility of the reasons prompting the requested change of plea; (2) the timing of the defendant's motion; (3) the existence or nonexistence of an assertion of innocence; and (4) whether, when viewed in the light of emergent circumstances, the defendant's plea appropriately may be characterized as involuntary, in derogation of the requirements imposed by Fed. R. Crim. P. 11, or otherwise legally suspect.  Sanchez-Barreto, 93 F.3d at 23. The fourth consideration, _______________ which hinges on whether the plea was knowing, voluntary, and intelligent, is most significant. Ribas-Dominicci, 50 F.3d _______________ at 78.  If, under this analysis, the defendant successfully meets his burden of demonstrating a fair and just reason for withdrawing his plea, the court must inquire whether the -6- 6 government will suffer any demonstrable prejudice from the withdrawal of the plea. Parrilla-Tirado, 22 F.3d at 371. _______________ Because we find that Muriel does not meet his burden under this analysis, however, we need not address the question of prejudice. See id. at 373 n.5; United States v. Doyle, 981 ___ ___ ______________________ F.2d 591, 596 n.6 (1st Cir. 1992).  (1) Plausibility (1) Plausibility Muriel must demonstrate a plausible reason for withdrawing his guilty plea. See Parrilla-Tirado, 22 F.3d at ___ _______________ 371. Plausibility cannot just rest on Muriel's second thoughts "'about some fact or a point of law, or about the wisdom of his earlier decision.'" Isom, 85 F.3d at 837 ____ (quoting Parrilla-Tirado, 22 F.3d at 371). Our review of the _______________ record supports the district court's assessment that Muriel's change of heart, while "understandable," was prompted by second thoughts about the wisdom of his decision to enter the plea agreement rather than file a motion to suppress evidence of the gun. Memorandum and Order of March 19, 1996 at 4. Muriel advances the following as plausible reasons for withdrawing his plea: (1) his motion to withdraw was not the product of second thoughts but was prompted by the Bailey ______ decision; (2) an alleged defect in the warrant makes his plea suspect; and (3) the plea bargain ceased to be to his benefit. We find none of these to be plausible reasons.   -7- 7 By his own admission Muriel had second thoughts all along about his strategic choice to plea bargain because he had doubts about the sufficiency of the evidence upon which the search warrant was based. But Muriel made a tactical decision to forgo the warrant challenge because, at the time, he thought it was in his best interests to secure dismissal of the most serious charge, 18 U.S.C. 924(c)(1) (the "Bailey charge"), which carries a five-year mandatory ______ sentence. Appellant's Memorandum in Support of Motion to Vacate Plea of Guilty at 2. Nearly three months later, when Muriel concluded that circumstances had changed such that a potential motion to suppress seemed to be a better strategy than his plea bargain, he decided that withdrawal of his plea was in order. But, as we have already stated, second thoughts do not constitute a plausible reason for withdrawal. Muriel also argues that the information contained in the affidavit in support of the search warrant was insufficient to establish probable cause, and that this is a plausible reason for withdrawing his plea. Specifically, Muriel contends that the warrant "contained lies," and that this renders his plea and conviction "legally suspect." Appellant's Br. at 12. But, as the district court pointed out, Muriel has not met his burden of showing that the affidavit did not sustain a finding of probable cause for the -8- 8 warrant. Memorandum and Order of March 19, 1996 at 5. Muriel has neither demonstrated that, under the "totality of the circumstances" test, the information contained in the affidavit does not show that there was "a fair probability that contraband or evidence of a crime" would be discovered at a specific place, Illinois v. Gates, 462 U.S. 213, 238 __________________ (1983), nor presented evidence of "deliberate falsehood or of reckless disregard for the truth" on the part of the affiant detective, Franks v. Delaware, 438 U.S. 154, 171 (1978).  __________________ Aside from the affidavit itself and his bare allegations that the affidavit contained lies by the informant and misstatements by the investigating detective, Muriel offers no proof that probable cause to issue the warrant was lacking. On the facts before us, we cannot say that the district court abused its discretion in rejecting Muriel's argument that deficiencies in the warrant rendered his plea legally suspect.1 We add that Muriel has no argument that he was previously deprived of the chance to file a motion to suppress because he was unaware of the facts. To the contrary, Muriel's decision to plead guilty, rather than file a motion to suppress, was a tactical decision made months before he moved to withdraw his plea.  ____________________ 1. Although we review the denial of a motion to suppress de novo, see United States v. Zayas-Diaz, 95 F.3d 105, 111 __ ____ ___ ____________________________ n.6 (1st Cir. 1996), we review the denial of a pre-sentence motion to withdraw a guilty plea for abuse of discretion. -9- 9 At the time Muriel pled guilty, he possessed all the relevant information about the affidavit that he now claims is defective. This is not a case where the defendant can point to newly-discovered evidence. Cf. United States v. Ramos, ___ _______________________ 810 F.2d 308, 313 (1st Cir. 1987) (finding that the lower court did not abuse its discretion in refusing to "give weight to a self-serving, unsupported claim of innocence raised judicially for the first time after the Rule 11 hearing," particularly where the defendants had not offered insight into the substance of the exculpatory information). We conclude that Muriel's unsupported claims regarding the sufficiency of the search warrant do not provide a plausible reason for withdrawal here. Finally, Muriel argues that he did not receive the benefit of his bargain because of Bailey's impact on his plea ______ agreement, because he received no downward adjustment for acceptance of responsibility, and because he was sentenced at the higher end of the applicable guideline range rather than the lower end. We have frequently stated that plea agreements are contractual in nature. See Parrilla-Tirado 22 ___ _______________ F.3d at 371; United States v. Atwood, 963 F.2d 476, 479 (1st _______________________ Cir. 1992). We have further explained that a defendant receives some "built-in" benefits when he or she pleads guilty and that, barring material misrepresentation, default on a promise, or breach of the agreement by the government, -10- 10 no additional consideration is required to support a guilty plea. Parrilla-Tirado, 22 F.3d at 371-72.  _______________ Muriel's memorandum in support of the motion to withdraw his plea states that he ultimately decided to forgo filing a motion to suppress evidence of the gun in exchange for the chance to bargain away the most significant charge against him, the Bailey charge, which carried a mandatory ______ minimum of five years. There was ample consideration for the agreement--in exchange for Muriel's guilty plea to Count III, the government agreed to drop Counts I and II and not to oppose a reduction in his sentence for acceptance of responsibility. Muriel cannot be permitted now to withdraw his plea in the hopes of renegotiating a better deal just because Counts I and II later looked like weak charges.  Although Muriel may believe that he did not receive any "built-in" benefits of his bargain, his bargain was with the government, which could only make the agreed-to recommendations to the court and could not guarantee that Muriel would receive a particular sentence. Sentencing is within the discretion of the district court. Moreover, as Rule 11(e)(1)(B) itself makes clear, a plea agreement of this kind is made with the "understanding that such recommendation or request shall not be binding upon the court." We agree with the district court that Muriel should not be allowed to vacate his guilty plea on this basis. -11- 11 (2) Timing (2) Timing The length of time between the entry of the plea and the filing of the motion to withdraw is a factor to be considered. Ramos, 810 F.2d at 312. "Because the timing of _____ a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just." Doyle, _____ 981 F.2d at 595.  Muriel moved to withdraw his plea on February 23, 1996, over two months after Bailey was decided, and almost ______ three months after his guilty plea was entered. This circuit's case law counsels against withdrawal after such a delay. See Isom, 85 F.3d at 839 (two-month delay too long); ___ ____ Ramos, 810 F.2d at 313 (thirteen-day delay too long); United _____ ______ States v. Keefe, 621 F.2d 17, 20 (1st Cir. 1980) (three-week ________________ delay too long). What is more significant, however, is that Muriel's motion to withdraw came one month after the release of the Presentence Investigation Report ("PSI Report"), which recommended a sentence of 30 to 37 months, and found Muriel to be ineligible for probation. If timing is indeed probative of motive, then it would seem that Muriel was actually prompted to move to withdraw his plea by his disappointment with the recommended sentence in the PSI Report. (3) Claim of Innocence (3) Claim of Innocence -12- 12 A defendant's assertion of innocence may cause a court to look favorably upon a motion to withdraw. Conversely, the lack of a claim of innocence weighs in favor of sustaining a guilty plea. See Parrilla-Tirado, 22 F.3d at ___ _______________ 373; Doyle, 981 F.2d at 596. Muriel does not claim to be _____ innocent of the felon-in-possession charge to which he pled guilty. He admitted his guilt at the Rule 11 hearing and has not asserted otherwise at sentencing or on appeal. Obviously, Muriel's failure to assert a claim of innocence weighs against his contention that his reason for withdrawing his plea is fair and just.  (4) Voluntary and Knowing Plea (4) Voluntary and Knowing Plea "[B]y entering a guilty plea, a defendant effectively waives several constitutional rights. For that waiver to be valid, the plea must amount to a voluntary and intentional relinquishment or abandonment of a known right or privilege." United States v. Gray, 63 F.3d 57, 60 (1st Cir. _____________________ 1995) (citing United States v. Cotal-Crespo, 47 F.3d 1, 4 _______________________________ (1st Cir.), cert. denied, 116 S. Ct. 94 (1995)). _____ ______ Accordingly, while technical violations of Rule 11 "do not count," violations of any of the three core concerns--absence of coercion, understanding of the charges, and knowledge of the consequences of the guilty plea--mandate that the plea be set aside. Ribas-Dominicci, 50 F.3d at 78. _______________ -13- 13 Muriel does not assert that his plea was not voluntarily entered or that he did not understand the Rule 11 plea colloquy. Instead, he claims that, at the time he agreed to the plea bargain, he could not have known that the Bailey decision would nullify Count II of the indictment, and ______ that therefore he was operating under a false assumption regarding the applicable law when he entered his plea. The argument that the change in law rendered his plea unknowing under the law at the time, and that he was prejudiced in giving up the opportunity to challenge the admission of evidence (the gun) fails for several reasons.  First, there are no allegations of coercion or mistake, nor is there any evidence of such on the part of the government. Second, the record shows that Muriel understood the charges against him and that he was aware of the possible risks involved in pleading guilty. The district court found that at the change of plea hearing, "Muriel was apprised of the precise nature of the charge set forth in Count III, the elements the government was required to prove in order to convict him, the sentence that could be imposed if his guilty plea was accepted and the rights he was relinquishing by pleading guilty." Memorandum and Order of March 19, 1996 at 7. In addition, Muriel's plea agreement stated that he understood the constitutional rights he was relinquishing, and that he understood that he had no right to withdraw his -14- 14 plea in the event the court did not accept the government's sentencing recommendations. Muriel acknowledged that he signed the agreement and understood its contents, and he concedes that he understood the Rule 11 colloquy.  This court has not allowed defendants, absent coercion or mistake, to renege on plea agreements on the basis that they have miscalculated their risks and benefits or have belatedly discovered a new defense. United States v. ________________ Allard, 926 F.2d 1237, 1243 (1st Cir. 1991).  ______ In reaching a plea bargain, a defendant assesses the likelihood of conviction and balances that against the relative severity of the sentence he expects to receive pursuant to the agreement and that which could be imposed upon conviction. In many cases, that process results in a compromise pursuant to which the defendant makes a conscious decision to relinquish a perceived defense. . . . To hold otherwise would render plea agreements and the pleas entered pursuant to them meaningless.  Id. (collecting cases). ___ Similarly, the Supreme Court has stated in Brady v. ________ United States that, "absent misrepresentation or other _______________ impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable ___________________________________ law does not become vulnerable because later judicial ___ decisions indicate that the plea rested on a faulty premise." 397 U.S. 742, 757 (1970) (internal citation omitted) (emphasis added). Muriel's post-hoc determination after ________ -15- 15 Bailey that he would be better off filing a motion to ______ suppress the gun and then bargaining anew with the government does not constitute grounds for vacating his plea.  We do not believe that a district court abuses its discretion by denying a motion to withdraw a guilty plea that is premised on the basis that a decision by the Supreme Court interpreting a criminal statute might affect a count which _____ was dropped by agreement of the parties in the plea bargain. Other circuits have also faced post-Bailey plea-agreement ______ appeals, but in contrast to the case at bar, the guilty pleas that have been vacated or remanded involve guilty pleas to the Bailey-affected charge.2 In other words, Muriel's ______ assertion here that he pled guilty under a false assumption  ____________________ 2. In ruling on the validity of a guilty plea to a Bailey- ______ affected charge, the Fifth Circuit has explained that, "where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense," a defendant is permitted to attack a guilty plea. United States v. Andrade, ________________________ 83 F.3d 729, 731 (5th Cir. 1996). In Andrade, the defendant _______ pled guilty to a 924(c)(1) charge in addition to three other charges. Determining that there was no factual basis for the 924(c)(1) offense, the court vacated the defendant's conviction and sentence on that charge and remanded to the district court. See also United States v. ___ ____ ________________ Abdul, 75 F.3d 327 (7th Cir.), cert. denied, 116 S. Ct. 2569 _____ _____ ______ (1996). But the case at bar differs fundamentally from such cases. Here, the Bailey decision did not change the ______ interpretation of a statute to which the defendant had pled guilty; rather, it affected a charge dropped by the government before Bailey was decided. We are not faced with ______ a defendant who may have been sentenced for conduct which did not constitute a federal offense, as in Andrade. Moreover, _______ Muriel does not deny that he is guilty of the offense charged.  -16- 16 about the law does not provide a fair and just reason because the change in law does not affect the charge to which he pled guilty, but a separate count of the indictment which was dropped. A case on point is United States v. Knight, 96 F.3d _______________________ 307 (8th Cir. 1996), cert. denied, No. 96-8236, 1997 WL _____ ______ 134752 (Apr. 14, 1997), in which the defendant pled guilty to a drug-conspiracy charge in return for the government's agreement to drop a 924(c)(1) charge, along with other drug offenses. The defendant did not assert that his plea was unknowing, but argued that "a change in the law applicable to the gun charge materially altered the plea agreement's basis." Id. at 309. On appeal, the Eighth Circuit decided ___ that the possibility that the defendant's conduct would not qualify as an offense under 924(c)(1) in light of Bailey ______ did not undermine his bargain with the government where the defendant had been indicted on several other charges which were dropped pursuant to the plea agreement. Id.  ___ We therefore need not review the factual basis for the dropped Bailey charge against Muriel to determine whether ______ the district court was correct in concluding that it was "far from certain" that Bailey would nullify Count II. Memorandum ______ and Order of March 19, 1996 at 6. It is sufficient to note that Muriel's contention that Count II would be nullified because of Bailey is not a sure bet. The district court ______ found that "evidence that Muriel had a firearm within -17- 17 reaching distance and made a movement toward it when police entered could be sufficient to establish that he actively 'used' the firearm." Id. at 6.  ___ We conclude that the district court did not abuse its discretion in refusing to allow Muriel to withdraw his guilty plea. II. II. Muriel also contends that the district court committed clear error by not awarding him a downward adjustment of two or three levels for acceptance of responsibility under Section 3E1.1 of the Federal Sentencing Guidelines.3  ____________________ 3. The United States Sentencing Guidelines Section 3E1.1 states:  Acceptance of Responsibility ____________________________ (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels. 2 (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or -18- 18 A defendant who pleads guilty is not entitled to a downward adjustment for acceptance of responsibility as a matter of right. U.S.S.G. 3E1.1, application note 3; United States v. Royer, 895 F.2d 28, 29-30 (1st Cir. 1990). ______________________ The defendant has the burden of proving entitlement to a decrease in the offense level, including a downward adjustment for acceptance of responsibility. United States _____________ v. Morillo, 8 F.3d 864, 871 (1st Cir. 1993). Whether a ___________ defendant has accepted responsibility for the offense is a fact-dominated issue, and therefore we review the district judge's ruling for clear error. Royer, 895 F.2d at 29. We _____ give the findings of the district court "a wide and deferential berth" because the court has the benefit of assessing the credibility of the defendant first-hand. U.S.S.G. 3E1.1 application note 5; Royer, 895 F.2d at 30. _____ While the facts are a close call, we accept the determination made by the district judge because it is not clearly erroneous.   ____________________ (2) timely notifying author- ities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 1 additional level.  -19- 19 Muriel did take some steps towards accepting responsibility for his offense--he wrote a letter to accept responsibility and he testified in court as to the purchase of the gun. (PSI Report at 4; Sent. Hr'g Pt. IV at 94.) The prosecution and the probation officer both recommended to the district court that Muriel receive a three-level reduction in his offense level for acceptance of responsibility. The district court did not follow the recommendation because it found that Muriel had lied.  It is within the discretion of the district court to deny a reduction on the basis of its determination that a defendant has resorted to half-truths or evasions from the truth in an effort to minimize his or her culpability. United States v. Ocasio-Rivera, 991 F.2d 1, 5 (1st Cir. ________________________________ 1993). The district judge did not believe Muriel's repeated assertion that the gun no longer belonged to him on the night the police executed the warrant, but belonged to his girlfriend. In spite of the fact that Ms. Ostos was unfamiliar with the gun, Muriel continued to insist that he had given it to her, and that she kept the loaded gun under ___ the pillow upon which he had been sleeping. The district court found that, while Muriel may have made the gun available to Ostos while he was in the apartment, Muriel continued to possess the gun up until his arrest. (Sent. Hr'g Pt. IV at 162.) The district court's credibility -20- 20 determination that Muriel was lying was not clearly erroneous.  III. III. The judgment of the district court is affirmed. affirmed ________ -21- 21